**Finberg v. Coin Automatic Laundry Equipment Company, Inc.**

*Leonard Levin* and *Jules Pearlstine,* for plaintiff.

*Joseph T. Labrum, Jr.* and *Richard M. Rosenbleeth,* for defendants.

CATANIA, J., November 24, 1971.—William Finberg, a minority shareholder of defendant-corporation, filed a complaint in equity seeking to enjoin the holding of a shareholders' meeting for the corporation scheduled for March 19, 1971, at which certain bylaw changes were scheduled to be voted on and further to enjoin the holding of any further shareholders' meetings until the books of the corporation were made available to plaintiff for audit and inspection.

The complaint in equity alleges that plaintiff, William Finberg, is the owner of 406 shares of common stock of the corporation and Samuel Winig is the owner of the remaining 994 shares of the defendant-company.

On March 10, 1971, a certified mail letter was di-

rected to plaintiff, who received the same on March 12, 1971, wherein Samuel Winig, president and principal shareholder of the corporation, notified plaintiff that a shareholders' meeting would be held on March 19, 1971, at 4:30 p.m., at the office of the company to consider and vote upon the following bylaw changes:

"The Board of Directors shall consist of two (2) Directors."

"Unless otherwise provided by the Board of Directors the compensation of officers and assistant officers of the corporation shall be fixed by the President."

"The Directors of this corporation shall not be required to send or cause to be sent to the shareholders of this corporation any financial report."

The complaint also alleges that on November 1, 1963, an agreement was entered into by plaintiff and Samuel Winig on the one hand, and Benjamin Winig on the other, whereby, in consideration of certain loans to the corporation by Benjamin Winig, the two shareholders would turn over to Benjamin Winig all of the stock of the company to be held by him as pledgee. The complaint also alleged that plaintiff would be irreparably damaged if a preliminary and a permanent injunction against their adoption were not granted by the court. The complaint did not aver that defendants prevented plaintiff from having an audit and inspection of the corporate books.

A preliminary injunction enjoining the holding of a shareholders' meeting by defendant-company was granted on March 19, 1971. On March 29, 1971, defendants filed an answer to the complaint, moving that the complaint be dismissed. A hearing was held by the court, at which time there was a colloquy between the court and counsel for both parties and various corporate

documents were offered in evidence by plaintiff. At that time, it appeared to the court that no issues of fact were involved in the case, and we ordered the matter down for argument on May 17, 1971, continuing the preliminary injunction in the meantime. Defendants have also filed a motion to dissolve the injunction and this motion was sustained by us on August 19, 1971. An appeal has been filed by plaintiff from that order, necessitating the writing of this opinion.

The first question for us to decide from the facts of this case is whether or not the number of directors may be reduced to two. The present factual situation involves an application of section 402 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §1402, which was amended by the Act of July 20, 1968, (no. 216) to read as follows:

"The board of directors shall consist of at least three directors, except that in cases where all the shares of a business corporation are owned beneficially and of record by either one or two shareholders, the number of directors may be less than three but not less than the number of shareholders."

In the present case, the proposal was to amend the bylaws to read, "The Board of Directors shall consist of two (2) directors." The main question in this case is how many shareholders own the stock of the defendant-company "beneficially and of record". From the record before us, the only two shareholders of record are Samuel Winig and William Finberg, and they also hold the beneficial interest in the shares subject only to a limited security interest in Benjamin Winig. From an examination of the pertinent paragraphs of the agreement between plaintiff and defendant and the pledgee, it is apparent that the sole present right of the pledgee is to hold the shares in order to prevent their transfer to another party in order to perfect the

pledgee's security interest under the Commercial Code. It is clear that the shareholders of record do not retain a bare legal title; they are the beneficial owners subject only to the contractual obligation not to transfer the shares and to elect the pledgee chairman of the board of directors. We, therefore, conclude that there are only two persons of record holding a beneficial interest in the defendant-corporation and, therefore, the bylaws of the corporation may be amended to reduce the number of directors to two.

The second question advanced is whether or not plaintiff has a vested right to the continuation of a bylaw that guarantees him a seat on the board of directors. There is no statutory provision nor case law that gives plaintiff a legal right to be a director of the defendant-corporation. The sole authority cited by plaintiff in support of his contention is section 505 of the Business Corporation Law relating to cumulative voting. It is obvious that under the cumulative voting section, the larger the board of directors the smaller the percentage of shares necessary in order to assure a seat on the board. But section 505 contains nothing whatever about the number of directors, and certainly no shareholder has a right to a board of directors large enough to guarantee him a seat through cumulative voting. See Stockholders Committee for Better Management v. Erie Technological Products Inc., 248 F. Supp. 380.

The last question which must be answered is whether or not defendant-corporation may lawfully amend its bylaws to authorize the president to fix the salaries of the officers and to eliminate the requirement of sending shareholders copies of the annual report. It is clear from reading the pertinent section of the bylaws of this corporation that either the shareholders or the directors have the power to amend the bylaws and it

is also undisputed in this case that notice of the amendments in question was sent and received.

The Business Corporation Law of May 5, 1933, P. L. 364, art. III, sec. 304, as amended, 15 PS §1304, grants the shareholders of the corporation the power to amend bylaws. The proposed amendment with regard to compensation of officers is authorized by section 406 of the Business Corporation Law, 15 PS §1406, which provides that the compensation of officers and assistant officers shall be fixed by the board of directors, unless the articles or bylaws otherwise provide. The amendment with regard to the financial statements is also authorized by section 318 of the Business Corporation Law, 15 PS §1318, which provides that yearly financial statements shall be sent to the shareholders by the board of directors, unless the bylaws otherwise provide. It should be noted that the change in the bylaws would not prohibit plaintiff as a shareholder from examining the corporate books and records under section 308 of the Business Corporation Law.

It is for these reasons that we granted defendants' motion to dissolve the preliminary injunction.